Curia, per

Frost, J.
The Ordinary is invested with judicial powers, and in the discharge of them, is known to the law as the presiding officer of a Court. His proper jurisdiction is extensive and unlimited in amount; and in addition to that, he exercises a special jurisdiction in the partition of real estate.
It is an anomaly that a Court should issue verbal process. To preserve the evidence of its proceedings, and to secure to them certainty, precision and authority, they must be in writing. The title to many tracts of land must be derived from a decree for partition in the Court of Ordinary. The Act which conferred the jurisdiction, carefully prescribed the forms of proceeding; and these have been re-enacted and more strictly enforced in the Act of 1839, (11 Stat. 44) respecting the office and duties of the Ordinary. By this Act (sec. 30) all the proceedings shall be' returned and carefully filed and kept, as matters of record. And the Ordinaries shall keep a book, in which they shall record each writ of summons and “ each order of sale,” and every other part of the proceeding. All sales of real estate are to be made by the *21 sheriff, under the order of the Ordinary ; and the sheriff shall certify to the Ordinary the purchaser and the hid ;* and if bond be not accordingly given, the Ordinary may order a re-sale at the risk of the former purchaser.” (Sec. 32.)
How can a verbal order for sale, whether the first or any subsequent sale, be returned and filed? and how shall it be recorded? A curious record it would be of entries of verbal orders; that, on a day stated, the Ordinary told the sheriff to sell the land; and at a subsequent date, that the sheriff told the Ordinary that he had sold the land, but the purchaser had not complied with the terms of sale; and thereupon, that the Ordinary told the sheriff to sell the land again. If such entries, or any particulars in them, be disputed between the Ordinary and the sheriff, between their contradictory assertions a purchaser could have no security. It is to prevent such consequences that orders for sale are required to be in writing, and returned and filed in the Ordinary’s office. It is not disputed that the order for the first sale should be*in writing: — but it is contended that, after a return of the first order for sale, a re-delivery of it to the sheriff, with verbal directions to resell, is a substantial ,compliance with'the Act. It is as necessary that an order for re-sale should be in writing, as the order for the first sale. A written order for sale cannot be distorted into an order, in writing, for a re-sale, at the risk of the purchaser at the first sale.
But it is affirmed, in the second ground of appeal, that the defendant is bound by the first sale; and cannot take exception to the irregularity of the second sale. That would be true if this were an action for the purchase moneyBut the Ordinary has rescinded the first contract of sale, by the re-sale of the land; and this action is brought to recover the difference. It has been decided in Yongue vs. Cathcart. (3 Strob. 304,) and in Yongue vs. *22 Aiken, (ante, 15,) decided at this Term, that the sheriff cannot recover from a purchaser who does not comply with the terms of sale, the difference between the first and a second sale, made at the risk of the first purchaser, unless the sheriff pursues the directions of the Act respecting his official sales. The same reason and necessity apply to official sales by the Ordinary. Neither of these officers, neglecting to proceed as directed by law, can evade the consequences by resort to a common law right of action against the first purchaser for the difference between the first sale and a re-sale, at the risk of the first purchaser. If this were permitted, the Acts regulating their official sales would be nugatory.
The motion is dismissed.
O’Neall, Evans, Wardlaw and Whitner, JJ., concurred.

Motion dismissed.

 By reference to the engrossed Act, it appears that bond is erroneously printed, in this connection, for bid.